STATE OF NEBRASKA v. MISSOURI PACIFIC RAILWAY COMPANY.

FILED MAY 21, 1902.    No. 11,269.

1. **Crimes: THIS COURT: COGNIZANCE: CONSTITUTION: GRANT: APPELLATE JURISDICTION.** The only authority this court has to take cognizance of crimes is that given by the constitution in the grant of appellate jurisdiction.

2. **Legislative Thought:** MOULD OF CRIMINAL LAW: PRESUMPTION: CRIMINAL JURISDICTION. When the legislative thought is cast in the mould of the criminal law, it will be presumed, nothing appearing to the contrary, that the remedies contemplated were those generally used in courts exercising criminal jurisdiction.

3. **Maximum Rate Law.** The provisions of section 9, of the act of 1893 known as the "Maximum Freight Rate Law," being punitive and not remedial, are to be enforced in accordance with the procedure of the Criminal Code.

ORIGINAL action by the state to recover penalties provided for a violation of the maximum freight rate law. *Dismissed.*

*Frank N. Prout, Attorney General,* and *Norris Brown,* for the state.

*Adophus. R. Talbot, James W. Orr* and *Bailey P. Waggoner, contra.*

SULLIVAN, C. J.

This action was commenced in this court to recover the sum of $435,000 claimed by the state from the Missouri Pacific Railway Company on account of nineteen alleged violations of the act of 1893, commonly known as the "Maximum Freight Rate Law." No question is made as to the validity of the statute, and the defendant, by its counsel, disclaims any wish or intention to evade responsibility for the acts described in the petition. It denies. however, that the case is one which this court has original authority to hear and determine. The argument urged in support of the jurisdictional objection is that the action is grounded upon a statute providing for the punishment of crime; that its purpose is to vindicate public justice, and that it is, therefore, in substance, and should be in form, distinctively criminal. The provision of the constitution (sec. 2, art. 6) conferring jurisdiction upon this court declares that "It shall have original jurisdiction in cases relating to the revenue, civil cases in which the

state shall be a party, mandamus, quo warranto, habeas corpus, and such appellate jurisdiction as may be provided by law." Clearly, the only authority we have to take cognizance of crimes is that embraced in the grant of appellate jurisdiction. The right of the state, then, to maintain the action depends upon the character of the action. If it is a civil suit, we have jurisdiction; otherwise we have not. The act of 1893 fixes maximum rates for the transportation of freight by common carriers, and gives a civil action to every person who is injured by a violation of any of its provisions. Immediately following the section providing for the redress of injuries suffered by private persons is the section upon which this action is founded. It is as follows: "Sec. 9. That in case any common carrier subject to the provisions of this act, shall do, or cause to be done, or permit to be done, any act, matter, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or thing in this act required to be done, such common carrier shall upon conviction thereof, be fined in any sum not less than one thousand ($1,000) dollars, nor more than five thousand ($5,000) dollars for the first offense; and for the second offense not less than five thousand ($5,000) dollars, nor more than ten thousand ($10,000) dollars; and for the third offense, not less than ten thousand ($10,000) dollars, nor more than twenty thousand ($20,000) dollars; and for every subsequent offense and conviction thereof, shall be liable to a fine of twenty-five thousand ($25,000) dollars; Provided, That in all cases under this act either party shall have the right of trial by jury." Session Laws, 1893, ch. 24. The attorney general contends that every violation of this section gives rise to a civil action in favor of the state, and in support of his contention cites *Mitchell v. State,* 12 Nebr., 538. In that case it was held that a civil action would lie to recover a penalty under a statute providing that a licensed vendor of malt, spirituous and vinous liquors, making sales in violation of law, should "forfeit and pay for each offense the sum of twenty-five

dollars." In *State v. Sinnott*, 15 Neb., 472, it was held under a like statute that the state might enforce its right to the penalty by a criminal prosecution. These decisions are consistent. Where the legislature has not indicated a preference, penalties and forfeitures may be recovered by the state in either a civil or criminal action. But the rule with respect to fines is different. The primary definition of a fine is a pecuniary punishment inflicted by the sentence of a court exercising criminal jurisdiction. And this is the sense in which the term is used in common speech. We do not remember having ever heard the action of a court giving judgment in a civil case described by the use of the word "fine." It was, of course, within the power of the legislature to provide for the enforcement of the law by civil action, but the evidence that it intended to do so is entirely wanting; the language it employed is significant: it spoke in the terminology of the criminal law. If a civil suit was really contemplated then we have here an unexampled perversion of technical terms, a studious shunning of familiar and appropriate forms of expression, an obvious effort to disguise the legislative purpose. Every transgression of the section quoted is characterized as an "offense," the means by which the law is to be enforced is described as a "prosecution," the verdict is called a "conviction,"* and the judgment a "fine." These words abound in the Criminal Code and they are associated in popular thought with laws for the prevention and punishment of crime. They were used in the statute as signs of ideas; their office was to describe what was passing in the legislative mind, and they show conclusively, it seems to us, that the legislature was not thinking of either civil law or civil remedies. The legislative thought was not cast in the mould of the criminal law by accident. A New Hampshire statute relating to the sale of imitation butter declared that any person violating its provisions should "forfeit and pay a fine of $50, and for a second

*Not till judgment is rendered on a verdict of guilty, is the accused convicted. *Faunce v. People*, 51 Ill., 311.—REPORTER.

and each subsequent offense a fine of $100," to be recovered in any court of competent jurisdiction; half the fine so recovered to go to the complainant and half to the county where the offense was committed. In *State v. Marshall*, 64 N. H., 549, it was held that, "In the absence of any special provision as to the mode of procedure, the use of the word 'fine' determines the form of the remedy." This decision was approved and followed by the supreme court of Minnesota in *State v. Horgan*, 55 Minn., 183. These, so far as we know, are the only cases in which the precise question has been decided. The Criminal Code expressly declares that all fines therein provided for shall be enforced by criminal action, and it was, beyond all doubt, the intention of the legislature that the punitive provisions of the act in question should be enforced in like manner.

The action is dismissed for want of jurisdiction.

DISMISSED.

NOTE.—*Mitchell v. State*, 12 Nebr., 538, cited in the foregoing opinion, was a case which arose under the old law, General Statutes, 1873, section 574, on page 852. The case of *Sinnott v. State*, 15 Nebr., 472, arose under the Ames Law, Compiled Statutes, 1901, section 14 of chapter 50. As stated in the foregoing opinion, these decisions are consistent; but what does COBB, J., the writer of the latter opinion, mean by this language of Judge Leavitt (which he cites with approval on page 475): "But if no one chooses to avail himself of this right [to prosecute by civil process], by instituting a suit, the guilty person may be proceeded against by indictment." Are the remedies cumulative? Are they elective? In other words, can you collect by civil process, and afterward indict? Judge Leavitt's language (*United States v. Bougher*, 6 McLean [C. C.], 277, 281) certainly implies that either an action in debt or indictment would lie. If so, can a judgment in an action for debt furnish a basis for a plea of *autrefois acquit* or *autrefois convict* to an indictment for the same offense?—REPORTER.