WESTERN UNION TELEGRAPH COMPANY V. STATE OF
NEBRASKA.

FILED FEBRUARY 10, 1910.   No. 16,369.

1. Telegraphs and Telephones: RATES: CRIMINAL PROSECUTIONS. Pro-
   ceedings for violation of the provisions of subdivision c, sec. 15,
   ch. 90, laws 1907, must be by criminal prosecutions, and not by
   civil actions.

2. ——: REGULATION: STATUTES: CONSTRUCTION. The chapter above
   mentioned, in so far as its provisions relate to the prevention of
   abuses, extortions and unjust discriminations, is applicable to
   common carriers of news and intelligence, such as telegraph and
   telephone companies, as well as to common carriers of goods and
   passengers.

3. Constitutional Law: TITLES TO ACTS. The title to that chapter is
   broad enough to embrace its provisions defining telegraph com-
   panies to be common carriers, prohibiting them from practicing
   abuses, extortions and unjust discriminations, and providing pen-
   alties therefor.

ERROR to the district court for Lancaster county:
WILLARD E. STEWART, JUDGE. Affirmed.

George H. Fearons, Henry D. Estabrook and Francis
A. Brogan, for plaintiff in error.

William T. Thompson, Attorney General, and George
W. Ayres, contra.

BARNES, J.

The Western Union Telegraph Company, hereafter
called the defendant, was prosecuted under the provis-
ions of subdivision c, sec. 15, ch. 90, laws 1907, being sub-
division c, sec. 15, art. VIII, ch. 72, Comp. St. 1909, com-
monly known as the "State Railway Commission Law",
for a violation of the provisions of that chapter. The trial
resulted in a conviction, and from a judgment imposing a
fine the defendant has prosecuted error.

The record discloses that a complaint was filed in the county court of Lancaster county charging the defendant with violating two sections of the act above mentioned. The first count of the complaint charged a violation of subdivision *c*, sec. 15 of the act, in that the defendant company, having on file in the office of the state railway commission a schedule of rates and charges, changed rule 3 thereof, and increased its rate for sending messages within the state of Nebraska, without first making application to the state railway commission for permission to make such change. The second count charged a violation of section 9 of the act, in failing to file the report required of common carriers by the terms of that section. The defendant company objected to the jurisdiction of the county court to entertain the complaint, upon the ground that the proceeding to recover the penalties prescribed in the act should be by a civil suit, and not by criminal prosecution. The objection was overruled, the defendant waived a preliminary examination and was bound over to the district court. The information in that court contained the same counts in the same order as they appeared in the complaint. The defendant demurred separately to each count upon the ground that the court had no jurisdiction to proceed by information in a criminal prosecution for the collection of penalties, and also because each count did not state facts sufficient to constitute a public offense. The court sustained the demurrer to the second count, but held that the proceedings for the enforcement of the penalty incurred by a violation of subdivision *c*, sec. 15, were properly brought as a criminal prosecution, and that the first count stated an offense. A trial to a jury resulted in a verdict of guilty under the first count. The court overruled defendant's motion in arrest of judgment, also its motion for a new trial, and adjudged that it pay a fine and costs, and this is the judgment of which it complains. It seems to be conceded that the change of rule 3 described in the first count of the information increases the rate or cost of sending messages

in this state; that such change was made without application to, or the consent of, the railway commission, and this brings us to the consideration of the errors complained of by the defendant.

It is first contended that the court erred in holding that the proceeding was properly instituted by criminal prosecution. In support of this contention defendant cites *Mitchell v. State,* 12 Neb. 538; *State v. Sinnott,* 15 Neb. 472; *State v. Standard Oil Co.,* 61 Neb. 28; *State v. Missouri P. R. Co.,* 64 Neb. 679. We are of opinion that these authorities do not support defendant's contention. In *State v. Sinnott* and *State v. Missouri P. R. Co., supra,* the court held that criminal prosecutions were properly brought. *State v. Standard Oil Co., supra,* was a case where the statute specifically provided for an action by injunction, and, of course, it was there held that the proper procedure was by civil action. In *Mitchell v. State, supra,* it appears that the amount of forefeiture sought to be recovered was fixed by the statute at a definite sum, while in the instant case the statutory provision is that any one convicted of the offense, of which the defendant has been found guilty, "shall be fined in any sum not exceeding ten thousand dollars."

It is argued, however, that where the statute declares the doing of an act to be unlawful, and prescribes a penalty therefor, the intention of the legislature as to whether the penalty is to be enforced by a civil or criminal action is to be ascertained by the terms used and the procedure provided. That this proposition is sound cannot be questioned, but it would seem that the legislature intended that violations of the act should be punished by criminal prosecutions for the following reasons. That part of the act which includes the matter of procedure reads as follows: "When the railway commission has reason to believe that any railway company, or common carrier, or any officer, agent or employee thereof, subject to the provisions of this act, has been guilty of any misdemeanor, or misdemeanors, as herein defined, said commission shall

immediately cause actions to be commenced and prose-
cuted against such railway companies, common carriers,
agents, officers or employees, as the case may be, which
may be brought in the county of the state through or into
which the line of the railway company or common carrier
sued may extend, and in the case of a misdemeanor on
the part of any officer, agent or employee as herein de-
fined shall be brought in the county where the misde-
meanor was committed; said actions commenced shall be
prosecuted in the name of the state, and no such action
shall be dismissed without trial unless said commission
and the attorney general consent thereto.    Such action
shall have precedence to all other business, except crim-
inal cases, cases of similar nature, and such other actions
as are herein provided for.    (a) All of the penalties herein
provided, unless otherwise provided for, shall be recovered
and suits thereon shall be brought in the name of the state
in the proper court having jurisdiction thereof in any
county in this state to or through which said railway
company or common carrier may be operating a road,
by the attorney general, or under his direction.    (b) In
all suits arising under this chapter the rules of evidence
shall be the same as in ordinary civil actions, except as
otherwise provided herein.    (c) It is hereby declared to
be unlawful for any railway company or common carrier
to change any rate, schedule or classification until ap-
plication has been made to the railway commission and
permission had for that purpose.    Any railway company
or common carrier violating this provision shall be deemed
guilty of a misdemeanor and on conviction thereof shall
be fined in any sum not exceeding ten thousand dollars."
Comp. St. 1909, ch. 72, art. VIII, sec. 15.

From the foregoing it appears that no form of proced-
ure is specifically prescribed by the terms of the act.    It
will be further observed that the actions mentioned in the
statute are to be brought in the name of the state, and in
case of a misdemeanor on the part of any officer, agent
or employee the action must be brought in the county

where the misdemeanor was committed. Other parts of the act provide that any officer, agent or employee violating certain provisions thereof shall be deemed guilty of a misdemeanor, and it is expressly provided that upon conviction such officer may be fined or imprisoned. It is also declared that any railway company or common carrier violating the provisions of the act shall be deemed guilty of a misdemeanor and on conviction thereof shall be fined in any sum not exceeding ten thousand dollars. There does not seem to be anything in the foregoing provisions inconsistent with the maintenance of a criminal prosecution, and it seems clear that the legislature had in mind, when it passed the act in question, that the penalty provided for therein should be fixed and be enforced by such a prosecution; otherwise the words, when *convicted* shall be fined in any sum not exceeding ten thousand dollars, would be meaningless. The word "convicted", as used in this act, must be understood to mean a determination of guilt in a criminal prosecution. *Fuunce v. People*, 51 Ill. 311.

Again, there seems to be another and very cogent reason why a civil action to recover the penalties for violations of the act cannot be maintained. Section 92 of the code provides that the petition in a civil action must contain: *"First.* The name of the court and county in which the action is brought, and the names of the parties, plaintiff and defendant. *Second.* A statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition. *Third.* A demand of the relief to which the party supposes himself entitled. If the recovery of money be demanded, the amount thereof shall be stated; and if interest thereon be claimed the time from which interest is to be computed shall also be stated." In view of these provisions it is difficult for us to see how a petition could be framed to recover a penalty, the amount of which is not fixed or determined. Here the amount of the fine which the court shall impose in case of a conviction could not be known

or ascertained in advance of the termination of a criminal prosecution, and it would therefore be impossible to allege the amount for which the state should demand judgment against the person, agent, corporation or company violating the provisions of the act. It will be presumed that the legislature had this in mind, and therefore refrained from making any provision to enforce the act by civil action. The statute having made no provision for such an action, it follows that, unless a criminal prosecution can be maintained, the legislature has passed a law which provides a penalty for its violation, and yet has left the matter in such a chaotic condition that there is no means of enforcing it. We are not at liberty to presume that the lawmakers intended to create such a situation.

It is also argued that a criminal prosecution cannot be maintained because of the following language contained in the act: "Such actions shall have precedence to all other business, except criminal cases, cases of similar nature, and such other actions as are herein provided for." Comp. St. 1909, ch. 72, art. VIII, sec. 15. It is evident that the sole purpose of this provision was to expedite suits to enforce the provisions of the act; but it was not intended that such suits should take precedence over other criminal cases, and the language above quoted will be so construed.

It is further urged that the provision that " 'suits thereon shall be brought in the name of the state in the proper court having jurisdiction thereof in any county in this state to or through which said railway company or common carrier may be operating a road' indicates a purpose to prosecute by civil action, and is inconsistent with a criminal proceeding, and that to adopt any other view we must assume that either the legislature intended to violate the constitutional rights of the employees of the offending common carrier by compelling them to be taken, perhaps, to a remote corner of the state for a trial for an offense alleged to have been committed in the

county of their domicile, or that the legislature intended that the fine and penalties were to be collected by civil action." We do not so understand the effect of this language. It must be read and construed with all of the other provisions of the act, and we find it expressly stated in that section of the statute first above quoted that the action, if against an employee, shall be brought in the county where the offense was committed. This is a complete answer to the objection above stated, for the employee is thereby permitted to make his defense in the county of his domicile.

The constitutionality of the provision that the corporation or company may be prosecuted in any county through which or into which its line or business extends is not involved in this proceeding, and that question will not be decided until it is properly before the court.

So we are of opinion that the statute contains nothing which would prohibit its enforcement by criminal prosecutions, and that it was the intention of the legislature that such prosecutions should be resorted to for violations of its provisions. To support this opinion we are not without authority. In *State v. Missouri P. R. Co.*, 64 Neb. 679, we held: "When the legislative thought is cast in the mould of the criminal law, it will be presumed, nothing appearing to the contrary, that the remedies contemplated were those generally used in courts exercising criminal jurisdiction." In *State v. Marshall*, 64 N. H. 549, it was said: "In the absence of any special provision as to the mode of procedure, the use of the word 'fine' determines the form of the remedy." To the same effect is *State v. Horgan*, 55 Minn. 183. The district court did not err in entertaining the criminal prosecution herein.

As a second ground for a reversal of the judgment complained of, it is claimed that "the provisions of subdivision *c*, sec. 15, rightly construed in connection with other portions of the act, have no application to the business of telegraph companies." This contention is supported by a well-written and instructive brief, and was urged

with much legal acumen at the hearing. It seems to us, however, that counsel have lost sight of the evident intention and purpose of the legislature in passing the act in question. By the constitution of 1875 telegraph companies were placed in the same class with railroad companies and other common carriers. Section 7, art. XI of that instrument, provides: "The legislature shall pass laws to correct abuses and prevent unjust discrimination and extortion in all charges of express, telegraph and railroad companies in this state and enforce such laws by adequate penalties to the extent, if necessary for that purpose, of forfeiture of their property and franchises." The people, by amendment of the constitution, having created a tribunal with jurisdiction to carry out the foregoing provision, it became at once the duty of the legislature to define the powers and duties of that tribunal and provide the manner of procedure to enforce its orders. In the performance of that duty the act in question was passed with the evident intention to include telegraph companies, as well as railroad and express companies, within its provisions; and it was enacted that telegraph companies should file with the state railway commission the schedule of their rates and charges then in force, and that such rates should not be changed without the consent of that tribunal, in order to prevent abuses, unjust discriminations and extortions, and we are of opinion that the act is sufficient for the accomplishment of that purpose. Indeed, the statute in express terms declares that telegraph companies are common carriers and are included in its provisions, and the commission is thereby required to regulate and control such companies to the full extent permitted by the constitution. It would seem that the defendant was originally of that opinion, because it filed its tariff book with the railway commission on the 11th day of September, 1907, which was shortly after the act went into effect, and again on the 3d day of October, 1907, filed another and revised tariff book with that tribunal. While this is not of itself conclusive, and may

not be binding upon the defendant, yet this may be considered as tending to show, to some extent at least, the view of the matter originally entertained by the defendant. We are therefore of opinion that the terms of the act in question apply to telegraph companies, and. defendant's contention on this point should not be sustained.

Finally, it is contended that the part of section 4 of the act which defines common carriers to include telegraph companies is not within the title of the act, and is therefore unconstitutional and void. It was admitted by the defendant upon the argument that the bill does not cover a double subject, and it is conceded in defendant's brief that there are general terms contained in the title which would be broad enough to include regulations concerning telegraph companies if they were not restricted by other portions of the title. In other words, that the legislature, in attempting to make an elaborate title, has in effect restricted the scope of the act to railway companies and common carriers engaged in the business of transporting freight and passengers only. As above stated, we are convinced that, in drafting the act, it was the intention of the legislature to include telegraph companies in its provisions, to prevent abuses, discriminations and extortions, and to that end required such companies to file a schedule of their rates with the state railway commission, and prohibited a change or increase of such rates without the consent of that tribunal. It is true that the main and more specific portions of the act refer to railway companies as common carriers of goods and passengers. But those provisions, which in their very nature could alone apply to telegraph companies, are not thereby excluded. The title to the act reads as follows: "An act, creating and defining the powers, duties and qualifications of the state railway commission and the secretary thereof and fixing their compensation; defining railway companies and common carriers, regulating the same, and providing the method of fixing, establishing, publishing rates, charges

and classifications for the transportation of passengers, freights and cars, including joint through rates and joint traffic arrangements, over and upon the various lines of said railway companies and common carriers in this state; to provide for a system of annual reports by common carriers; the method of making, establishing and enforcing the general orders of said commission; defining unjust discriminations; to provide penalties for the violations of the provisions of this act, and to repeal all acts or parts of acts in conflict herewith, and to declare that an emergency exists." Laws 1907, ch. 90. This title is comprehensive enough to include all common carriers, whether of freight or passengers, or of news and intelligence. By the use of the conjunction the legislature made it clear that the provisions of the act are intended to apply not only to railroad companies, which are at the common law carriers of passengers and freight, but also to all other kinds or classes of common carriers doing business within this state. By this title the legislature gave notice that it proposed to define common carriers, and by section 4, as found in the body of the act, telegraph companies are so defined. That the legislature had power to include such companies within the definition of common carriers, and provide for the prevention of abuses, unjust discriminations and extortions, there can be no doubt. Indeed, from the very nature of telegraph companies they are common carriers, and it was so held by this court in *Pacific Telegraph Co. v. Underwood*, 37 Neb. 315. In many of the states it is held that the power to make all needful regulations is embraced in the common law, and in any event there is no question but telegraph companies are common carriers when they are so designated by legislative enactment. Jones, Telegraph and Telephone Companies, sec. 30, says: "It is a pleasure to note the fact that most of the states have, or are enacting, statutes which declare them common carriers. * * * They are agents of the government and have the power of exercising the right of eminent domain, without which they

could not invade the private property of an individual without his consent. With all these privileges granted by the government, and the almost perfect control over the art of telegraphy by the late and modern improvements, it is but fair and just that they be placed under almost if not the same restrictions as that which the common law imposes on common carriers." Having the power to define and regulate telegraph companies as well as other common carriers, the legislature gave notice by the title to the act that it proposed to exercise that power, and, after having given notice, it so defined them, and proceeded to carry out its purpose. That this was a substantial compliance with section 11, art. III of the constitution, there is no doubt. We are therefore of opinion that the law in question is not vulnerable as to the constitutional objection above stated.

Having thus disposed of defendant's assignments, and finding no error in the record, the judgment of the district court is

AFFIRMED.