REQUESTED BY: Senator Vard Johnson Nebraska State Legislature Unicameral, State Capitol Lincoln, Nebraska 68509
Dear Senator Johnson:
In your letter of February 17, 1981, you requested our opinion `. . . on the constitutionality of LB 9 which prevents certain trusts from owning, buying or leasing agricultural lands in the state.' We have reviewed the provisions of LB 9 in light of your request, and we will discuss below a number of threshold constitutional problems with this bill. Because these threshold problems relate to certain ambiguities we have found in the legislation, it is not possible for us to consider every constitutional issue which might be raised in a court of law. Rather, we have limited our discussion to these fundamental problems which, in our opinion, render LB 9 constitutionally suspect.
LB 9 is described by its introducer as an act relating to trusts, `. . . to prohibit the acquiring of additional agricultural land by certain trusts; . . . and to provide a penalty.' At this point, we note that it is crucial, in understanding the operative provisions of the act, to define the term `trust' and to understand the activity prohibited by force of law.
Section 5 of the act defines `trust' as meaning:
 A fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.
 Trust does not include a person acting in a fiduciary capacity, as defined in section 4 of this act. A trust includes a legal entity holding property as trustee, agent, escrow agent, attorney-in-fact, and in any similar capacity.
You will note we underlined that portion of the definition above which excluded from the definition of trust `a person acting in a fiduciary capacity, as defined in section 4 of this act.' Section 4 of LB 9 defines `fiduciary capacity' as meaning `an undertaking to act as executor, administrator, personal representative, guardian, conservator, or receiver.'
Therefore, while the legislation attempts to describe what a trust is not intended to mean, we are left with a great deal of confusion as to what type of entity constitutes a `trust' for the purposes of this act.
Since the act does not contain a detailed statement of purpose and does not reference any particular example beyond `a legal entity holding property as trustee, . . . and in any similar capacity,' we turn now to accepted legal definitions of the term `trust.'
A trust has been defined as the right, enforceable solely in equity, to the beneficial enjoyment of property the legal title to which is vested in another. 89 C.J.S.,Trusts § 2 at 712 (1955). It has been otherwise defined as an obligation on a person arising out of a confidence reposed in him to apply property faithfully according to such confidence. Id. Furthermore, terms such as `trust' and `trust fund' have been defined as merely describing a body of rights, and not constituting any separate entity. In other words, the parties and real interests are the owners of the trust income or the remainder interest in the property.
Applying these accepted legal definitions to the problem at hand, we note that section 9 of the act provides, in pertinent part, as follows:
 No trust, other than a family trust, authorized trust, or testamentary trust, shall either directly or indirectly, acquire or otherwise obtain or lease any agricultural land in this state, . . .
Penalty provisions are then set out at section 10 of the act, providing:
 Any trust, other than a family trust, authorized trust, or testamentary trust, violating this act shall upon conviction, be punished by a fine of not more than fifty thousand dollars and shall divest itself of any land acquired in violation of this act within one year after conviction.
Two clear problems emerge in attempting to interpret these fundamental operating provisions of the act. First, the prohibitions are directed toward an entity known as a `trust' which is something other than a person, but also something undefined by the act. This ambiguity is further complicated by the apparent attempt, at section 10, to impose criminal liability for a violation of the act, apparent from the use of the terms `conviction' and `punished by a fine.' Our Supreme Court has held that when the Legislature uses such terms associated with the criminal law, it will be presumed that the remedies contemplated were those generally used in courts exercising criminal jurisdiction. State v.Missouri Pacific Railway Co., 64 Neb. 679, 90 N.W. 877
(1902). Given the act's attempt to impose criminal sanctions for enforcement purposes, the offense must be defined with sufficient definiteness and ascertainable standards of guilt to inform those subject thereto as to what particular conduct will render them liable for punishment. State v.Huffman, 202 Neb. 434, 275 N.W.2d 838 (1979).
The persons having an interest in any purchases made by, or enforcement actions brought against a trust are the trustee and beneficiaries. However, the prohibitions and enforcement provisions of the act do not even address these parties. Consequently, we have great difficulty in understanding how these provisions could be enforced, much less interpreted in a way to satisfy the constitutional standards of notice to the affected trusts, trustees, and beneficiaries. Penal statutes which prohibit certain acts and provide punishment for their violation should not be susceptible to ambiguity so that a citizen may act upon one conception of the law, and the courts upon another. Id.
As we mentioned at the outset, it is difficult for us to discuss further constitutional problems given these interpretative difficulties we have had with the proposed legislation. We simply note at this point that, if the act is intended to restrict the actions or, or impose sanctions upon trustees, provisions must be made to reconcile such standards with the general provisions for trust administration set forth at Neb.Rev.Stat. § 30-2812, et seq. (Reissue 1979). Furthermore, we would note that certain beneficiaries may have an interest in such trust property, and the state cannot demand a forfeiture thereof without establishing strict notice and procedural due process guidelines for such a taking. Asbury Hospital v. Cass County,326 U.S. 207 (1945). Finally, we have not discussed constitutional issues raised by the Legislature treating one class of trust as separate in part from other types of trusts, at least with regard to the purchase and lease of agricultural property. We believe it inappropriate to discuss these separate issues when we are not certain of the activity the legislation is designed to prevent, given the definitional problems discussed above.
Sincerely yours, PAUL L. DOUGLAS Attorney General Robert F. Bartle Assistant Attorney General